IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON



DAVID PICRAY,

               Plaintiff,

      v.

CHRISTOPHER DUFFITT, et al.,

               Defendants.

_____

                                     Civ. No. 6:12-cv-00944-MC

                                     OPINION AND ORDER

MCSHANE, Judge:

      Plaintiff David Picray brings this action seeking damages for alleged violation of his rights under the First and Fourth Amendments as selectively incorporated by the Fourteenth Amendment Due Process Clause pursuant to 42 U.S.C. § 1983, and other tortious conduct under Oregon common law.[1] Defendants filed this motion for summary judgment, ECF No. 24. This Court has jurisdiction under 28 U.S.C. §§ 1331 & 1367. Upon review, defendants' motion for summary judgment, ECF No. 24, is GRANTED IN PART and DENIED IN PART.

**PROCEDURAL AND FACTUAL BACKGROUND**

      This action arises out of an alleged violative arrest and search warrant. On May 27, 2010, a third-party, Alexander Humphrey, contacted Benton County Sheriff's Dispatch to report that Picray was "videotaping [Humphrey] and taking multiple pictures of [Humphrey]" while driving on interstate highway 99. Decl. of Robert E. Franz, Jr. 2, ECF No. 27-2. During Humphrey's

---

[1] Plaintiff brings three claims under Oregon common law: (1) False Arrest; (2) Intentional Infliction of Emotional Distress (IIED); and (3) Malicious Prosecution. Pl.'s Compl. ¶¶ 9–11, ECF No. 1.

1 – OPINION AND ORDER

conversation with dispatch, Humphrey indicated that "[Picray] just hit the brakes while [Humphrey] was directly behind him. [Humphrey] almost rear-ended [Picray]." *Id.* at 6.[2] Eventually Picray turned off of interstate highway 99, *id.* at 8, and Humphrey drove to Benton County Sheriff's Office to meet with Deputy Duffitt to give a statement, Decl. of Christopher Duffitt 2, ECF No. 26. Humphrey met with Duffitt at about 4:30 PM. Decl. of Robert E. Franz, Jr. 1, ECF No. 53-3. At that meeting, "Humphrey told [Duffitt]: 'when [Picray] slammed on his brakes, [Humphrey] was in fear of serious injury.'" Decl. of Christopher Duffitt 3, ECF No. 26.

After Humphrey left, Duffitt went to the Courthouse and conferred with Deputy District Attorney Karen Stanley. *Id.* at 3. Stanley informed Duffitt that probable cause existed to arrest Picray for Reckless Driving, ORS § 811.140 (2013), and Recklessly Endangering Another Person, ORS § 163.195 (2013). *Id.* Duffitt then contacted Humphrey and asked him to return to the Sheriff's Office for photographic identification. *Id.* at 4.[3] Humphrey returned and then identified Picray as the other driver. *Id.*

After the photographic identification, Lieutenant Ridler informed Duffitt and Deputy Hardison that Picray was at the intersection of Third and Van Buren, Corvallis, Oregon. Decl. of Robert E. Franz, Jr. 5, 7, ECF No. 53-3. Duffitt and Hardison met up with Ridler and then made contact with Picray at the intersection of Fourth and Van Buren, near the Benton County courthouse. *Id.*; *see also* Decl. of Greg Ridler 2, ECF No. 28 (indicating that Ridler observed Picray's arrest). Importantly, both Duffitt and Ridler had previously interacted with Picray in

---

[2] Picray contests Humphrey's characterization. According to Picray, Humphrey ran a stop sign while entering Interstate 99 West and continued to drive erratically as Picray followed. *See* Decl. of David E. Picray 1–2, ECF No. 45; Decl. of Robert E. Franz, Jr. 6, ECF No. 53-6.
[3] Duffitt "printed out a recent picture of [Picray] that [Duffitt] found on the Gazette Times Website." Decl. of Robert E. Franz, Jr. 5, ECF No. 53-6.

2 – OPINION AND ORDER

January 2010. Decl. of David E. Picray 5, ECF No. 45.[4] At the time of contact, Picray was picketing "police misconduct in Benton County." Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 2, ECF No. 43. Duffitt and Hardison arrested Picray without warrant after he admitted being the other driver. Decl. of Christopher Duffitt 5, ECF No. 26; *see also* Decl. of David E. Picray 5, ECF No. 45. Duffitt, Hardison and Ridler then secured Picray's picket sign in the trunk of one of the police vehicles. Decl. of Christopher Duffitt 5, ECF No. 26. Picray was subsequently booked and released the same day. Decl. of David E. Picray 5, ECF No. 45.

On or about May 29, 2010, Picray visited Police Chief Justin Jones of the Adair Village Police Department. Decl. of David E. Picray 5–6, ECF No. 45; *see also* Decl. of Robert E. Franz, Jr. 7–8, ECF No. 53-6 (indicating that Picray and Jones met on June 4, 2010). During that visit, Picray showed Jones two photographs[5] and a DVD copy of the video[6] taken during Picray's altercation with Humphrey. Decl. of David E. Picray 6, ECF No. 45; Decl. of Robert E. Franz, Jr. 8, ECF No. 53-6. On or about June 9, 2010, Duffitt spoke with Jones via telephone about the photographs and DVD. Decl. of Robert E. Franz, Jr. 8, ECF No. 53-6; *see also supra* note 6–7.

On June 10, 2010, Benton County Circuit Judge David Connell issued two search warrants based on an affidavit submitted by Duffitt. Decl. of Christopher Duffitt 1–4, ECF No. 32-1 (search warrants); Decl. of Robert E. Franz, Jr. 1–11, ECF No. 53-6 (affidavit in support of search warrants). Both warrants authorized Benton County Police Officers:

---

[4] Both Duffitt and Ridler interacted with Picray in January 2010. Decl. of David E. Picray 5, ECF No. 45; Decl. of Robert E. Franz, Jr. 6–7, ECF No. 53-5. At that time, Picray was protesting "two state ballot measures that would increase income taxes." Decl. of David E. Picray 5, ECF No. 45; *see also* Decl. of David E. Picray 1, ECF No. 45-2. Picray alleges that during the January interaction, Ridler "repeatedly threatened [Picray] with arrest for that protest," until Picray's ceased his activity. *Id.*; *see also* Decl. of Robert E. Franz, Jr. 6–7, ECF No. 53-5 (stating that Picray left after a conversation with Duffitt and Ridler).
[5] Both photographs depict Humphrey driving behind plaintiff. Aff. of David C. Force 1–2, ECF No. 44-1. Neither photograph appears indicative of erratic driving by either Picray or Humphrey. *See id.*
[6] The DVD, one minute and thirty-four seconds in length, depicts Humphrey driving in front of Picray and then subsequently pulling over and waiving Picray to pass. Ex. 5, Compact Disk, ECF No. 46. This video does not appear indicative of erratic driving by either Picray or Humphrey. *See id.*

3 – OPINION AND ORDER

> TO SEARCH FOR, SEIZE AND FORENSICALLY ANALYZE;
> Cellular Phones inclusive of any images, videos, recordings, digital cameras, video recorders, computers including any computer hardware and computer software, Internet, Internet Sites, Multimedia devices including USB Drives, CD-R diskettes, Compact Disks, external and removable memory, and any printed pictures.

Decl. of Christopher Duffitt 1, 3, ECF No. 32-1. That evening, at about 8:45 PM, Duffitt and seven other officers went to Picray's residence to execute the search warrants. Aff. of David Force 8, ECF No. 44-4.[7] The officers repeatedly knocked and shouted loudly "Sheriffs Office Search Warrant." *See, e.g.*, Decl. of Robert E. Franz, Jr. 9, ECF No. 53-3; Decl. of David E. Picray 6, ECF No. 45 (indicating that there "was a rapid series of sudden and very loud knocks on [Picray's] front door, accompanied by shouting"). After waiting,[8] Bowers forced entry through the front door. Decl. of Robert E. Franz, Jr. 8, ECF No. 53-3. Upon entering, Picray was located in the hallway and subsequently handcuffed. *Id*. at 9. Ridler arrived at the scene after the other officers had entered Picray's home. *Id*. at 10; *see also* Decl. of Greg Ridler 2, ECF No. 28. Incident to execution of both warrants, defendants seized a variety of multimedia devices.[9]

---

[7] The other officers included: Detective Glass; Corporal Wilcox; Deputy Weikel; Deputy Bowers; Deputy Horn; Deputy Hamby; and Deputy Horn. Aff. of David Force 8, ECF No. 44-4. Lieutenant Ridler arrived after the other officers entered the house. Decl. of Greg Ridler 2, ECF No. 28.

[8] Defendants claim that "the officers waited over half a minute before forced entry." Mem. of Supp. of Defs.' Mot. for Summ. J. 27, ECF No. 25; *see also* Decl. of Christopher Duffitt 5–6, ECF No. 26 (indicating that the officers knocked more than 35 times sequentially); Ex. 105, Universal Serial Bus, ECF No. 53-1 (indicating that forced entry occurred approximately 32 seconds after announcement); Decl. of Robert E. Franz, Jr. 9, 11–12, ECF No. 53-3 (indicating forced entry occurred "longer than 30 seconds" after announcement).

[9] In total, defendants seized:

> CMD-12 One compact disk (CD-R80) in yellow sleeve found in red wagon and pointed out by PICRAY in living room
> CMD-13 One compact disk (CD-R80) in yellow sleeve found in office
> CMD-3 Silver Compaq laptop . . .
> CMD-5 Samsung Slider Phone . . .
> CMD-8 Compaq Passario . . .
> CMD-4 Kodak Easy Load 35 Camera . . .
> CMD-7 Sansa recording device . . .
> CMD-6 Green Ammo Box containing various Compact Disk's and Pictures found in office on floor
> CMD-10 Sansa device . . .

4 – OPINION AND ORDER

On August 12, 2010, Ridler sent an email to Picray informing Picray that "Criminal Charges [would] not be filed against [Picray]" and that Picray's property would be returned. Decl. of Gregory Ridler 1, ECF No. 28-1. Picray's property was released to the Adair Village Police Department and subsequently picked up by Picray on or about August 19, 2010. Decl. of David E. Picray 8, ECF No. 45 (indicating that Picray picked up his property "a few days" after August 12, 2010).

## STANDARD OF REVIEW

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonably jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha I. Air., Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). This Court views the evidence in the light most favorable to the non-moving party. *Allen v. City of L.A.*, 66 F.3d 1052, 1056 (9th Cir. 1995) (citing *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994)). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(c).

## DISCUSSION

Plaintiff, in his complaint, asserts: (1) Fourth Amendment violations pursuant to 42 U.S.C. § 1983; (2) First Amendment violations pursuant to 42 U.S.C. § 1983; and (3) other

---

CMD-9 Lumix DC Vario Camera . . .
CMD-11 Panasonic mini cassette player/recorder . . .

Decl. of Robert E. Franz, Jr. 10, ECF No. 53-3.

5 – OPINION AND ORDER

tortious conduct under Oregon common law. Defendants move for summary judgment as to all claims.

## I. Plaintiff's Fourth Amendment Claim under 42 U.S.C. § 1983

Plaintiff, in his Fourth Amendment claim (#2), asserts multiple violations, including: (1) defendants unlawfully arrested plaintiff; (2) defendants obtained search warrants under false pretenses; and (3) defendants used excessive force in executing the search warrants. This Court addresses each argument in turn.

## A. Plaintiff's Arrest

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. CONST. amend. IV. "The 'reasonableness' of a warrantless arrest is determined by the existence of probable cause. *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995) (citations omitted). "Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe 'that the suspect has committed, is committing, or is about to commit an offense.'" *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990) (quoting *Mich. v. DeFillippo*, 443 U.S. 31, 37 (1979)).

Picray was arrested without warrant on May 27, 2010, for Reckless Driving, ORS § 811.140 (2013), and Recklessly Endangering Another Person, ORS § 163.195 (2013). Decl. of Christopher Duffitt 5, ECF No. 26; *see also* Decl. of David E. Picray 5, ECF No. 45. This Court first looks to those statutes.

ORS § 811.140 (2013) provides:

> (1) A person commits the offense of reckless driving if the person recklessly drives a vehicle upon a highway or other premises described in this section in a manner that endangers the safety of persons or property.

(2) The use of the term "recklessly"[10] in this section is as defined in ORS 161.085

(3) The offense described in this section, reckless driving, is a Class A misdemeanor and is applicable upon any premises open to the public.

Defendants, in reliance upon statements made by Humphrey, contend that probable cause to arrest Picray for Reckless Driving arose when he "slam[ed] his brakes to a complete stop on Highway 99" and "took pictures while driving." Decl. of Robert E. Franz, Jr. 8–9, ECF No. 53-6. In contrast, plaintiff argues that such conduct is more akin to ORS § 811.500.[11] However, plaintiff's argument does not take into account the full scope of Picray's alleged activities. *See, e.g.*, Decl. of Robert E. Franz, Jr. 3, ECF No. 27-2. ("[Picray] filmed [Humphrey] - - [Humphrey was in front of him. [Picray] filmed [Humphrey] all the way into town."); *see also supra* note 5–6.

Picray's alleged behavior included: slamming his brakes in front of Humphrey; filming Humphrey driving; taking photographs of Humphrey; following Humphrey; and giving Humphrey the finger repeatedly. *See* Decl. of Robert E. Franz, Jr. 2–6, ECF No. 27-2. Although

---

[10] ORS § 161.085(9) (2013) states:

> "Recklessly," when used with respect to a result or to a circumstance describe by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

[11] ORS § 811.500 (2013) states:

> (1) A person commits the offense of unlawful stop or deceleration if the person is operating a vehicle and the person stops or suddenly decreases the speed of the vehicle without first giving an appropriate signal to the driver immediately to the rear when there is opportunity to give the signal.
>
> (2) Appropriate signals for the purpose of this section are as designated under ORS 811.395 and 811.400.
>
> (3) The offense described in this section, unlawful stop or deceleration, is a Class B traffic violation.

7 – OPINION AND ORDER

a close question, this alleged behavior, particularly when occurring on a "high volume road" at an "especially busy time," *see* Decl. of Robert E. Franz, Jr. 3, ECF No. 53-6, leads this Court to find that probable cause existed to arrest Picray for reckless driving. Collectively, these circumstances are sufficient to warrant a prudent person to believe that Picray was aware of and consciously disregarded the risk of accident inherent in filming, taking photographs, engaging in provocative gestures, and abruptly braking while driving on a busy street. *See, e.g.*, *Morehouse v. Haynes*, 350 Or. 318, 329 (2007).[12]

As to the crime of Recklessly Endangering Another Person, ORS § 163.195 (2013) states:

> (1) A person commits the crime of recklessly endangering another person if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.

> (2) Recklessly endangering another person is a Class A misdemeanor

*See also supra* § I(A) note 10 (defining "recklessly"). Defendants again argues that probable cause arose when Picray "slam[ed] his brakes to a complete stop on Highway 99" and "took pictures while driving." Decl. of Robert E. Franz, Jr. 8, ECF No. 53-6. As indicated above, probable cause existed to arrest Picray for disregarding a "substantial and unjustifiable risk," i.e., reckless driving. However, based upon the same conduct, a prudent person could also find that

---

[12] In *Morehouse*, the Oregon Supreme Court found:

> [A] reasonable juror could find that, where the road itself had sharp turns, with which defendant was very familiar, for defendant to enter a harp turn while exceeding the advisory speed by 20–25 miles per hour and tuning the radio created a substantial and unjustifiable risk to the safety of persons or property and that disregarding that risk was a "gross deviation" from what a reasonable driver would do in the same situation. If a reasonable driver, knowing what defendant knew, would follow the cautionary signs and keep his eyes on the road while negotiating what the signs warned him was a sharp turn, then a jury could find that defendant's conduct sufficiently deviated from that standard so as to make the risk of harm to persons and property "substantial and unjustified."

350 Or. at 331.

8 – OPINION AND ORDER

engaging in such behavior *creates* a substantial risk of serious physical injury to another person sufficient for Recklessly Endangering Another Person. *See* Decl. of Robert E. Franz, Jr. 5, ECF No. 53-6 ("[Picray] slammed his brakes to a complete stop [from a speed of 35–40 MPH]. Humphrey had to slam on his brakes . . . and drive around the vehicle nearly hitting it."); *see also Jones v. State*, 246 Or. App. 253, 259 (2011) (quoting *State v. Sumerlin*, 139 Or. App. 579, 587 n.7 (1996)) ("ORS 163.195 was intended to cover 'potential risks as well as cases where a specific person is within the zone of danger.'"). Accordingly, defendants are GRANTED summary judgment.

## B. Validity of the Search Warrants

Plaintiff contends that: (1) Duffitt omitted facts in his affidavit and misled Judge Connell and (2) both warrants were not supported by probable cause. Because this Court has already addressed plaintiff's second argument, *see supra* § I(A),[13] this Court's inquiry will focus on Duffitt's alleged omissions. Plaintiff contends that Duffitt's affidavit unlawfully omitted "evidence of [Humphrey's] reliability" and did not mention and/or adequately capture that "Chief Jones had viewed [Picray's DVD and two photographs]." Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 11, ECF No. 43.

As to Humphrey's reliability, "[his] credibility was not seriously in dispute. This was not an unreliable criminal informant, but a complaining victim who had no apparent reason to lie." *United States v. Sparks*, 265 F.3d 825, 830 (9th Cir. 2001), *overruled on other grounds by United States v. Grisel*, 488 F.3d 844, 851 n.5 (9th Cir. 2007); *see also United States v. Burbridge*, 252

---

[13] *Giordenello v. United States*, 357 U.S. 480, 485–86 (1958) (citations omitted) ("The language of the Fourth Amendment, that '* * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . of course applies to arrest as well as search warrants.").

F.3d 775, 779 (5th Cir. 2001);[14] *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). Because

this Court has no indication that Humphrey was unreliable, Judge Connell was therefore entitled

to rely on Humphrey's hearsay statements without obtaining independent confirmation. *See, e.g.*,

*United States v. Al-Azzawy*, 784 F.2d 890, 894 (9th Cir. 1984).

As to Duffitt's alleged omissions, "[t]here is, of course, a presumption of validity."

*Franks v. Del.*, 438 U.S. 154, 171 (1978). To the extent that plaintiff implicitly argues that

Duffitt knew the affidavit "was false or [that Duffit] would have known was false except for his

reckless disregard for the truth," this Court is not persuaded. *United States v. Leon*, 468 U.S. 897,

989 (1984). First, Duffitt's affidavit explicitly included details about his conversation with Chief

Jones.[15] Second, plaintiff provides little evidence to support his statement that "Chief Jones had

viewed [the DVD] and determined that it showed no evidence of the alleged crimes." *See, e.g.*,

Decl. of Robert E. Franz, Jr. 10, ECF No. 53-5 ("[Jones] did not say that he saw evidence of road

rage or reckless driving."). Third, this Court, having reviewed the DVD and photographs, *see*

*supra* note 5–6, finds that this evidence sheds little light on Picray's alleged violation of ORS §

---

[14] In *Burbridge*, the Court found:

> The citizen eyewitness's account is credible because eyewitnesses are seldom involved with the miscreants or the crime. Eyewitnesses by definition are not passing along idle rumor, for they either have been the victims of the crime or have otherwise seen some portion of it. Furthermore, identified persons who claim to have been witnesses of the offense may be held accountable if the information turns out to be false.

252 F.3d at 779 (citations omitted) (internal quotation marks omitted).

[15] The affidavit, in relevant part, states:

> On Wednesday, June 09, 2010, I spoke with Chief Jones of the Adair Village Police Department by phone after hearing that he had spoken with DAVID PICRAY. Chief Jones told me that PICRAY had stopped by his office on Friday, June 4, 2010, and told him about being arrested by the Benton County Sheriffs Office. Chief Jones told me that PICRAY . . . showed him pictures and videos on a Compact Disk of the day that he was arrested . . . . Chief Jones told me that the pictures and videos were of another vehicle on the road . . . .

Decl. of Robert E. Franz, Jr. 8, ECF No. 53-6.

10 – OPINION AND ORDER

811.140 and ORS § 163.195.[16] Accordingly, this Court is satisfied that both warrants were facially valid and defendants are GRANTED summary judgment. *See also Leon*, 468 U.S. at 914 (quoting *United States v. Ventresca*, 380 U.S. 102, 106 (1965)) ("[W]e have expressed a strong preference for warrants and declared that 'in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fail.'").

## C. Execution of the Search Warrants

Plaintiff broadly contends that "the execution of the warrant[s] was unreasonable." Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 11, ECF No. 43. Plaintiff directs this Court's attention to the underlying circumstances, including: nine police officers participated in the execution of the warrants; the officers forced entry through the front door after waiting approximately thirty seconds; a copy of the warrants was not readily available upon entry; Picray was detained at gun point; and Picray was handcuffed during the search.

"The general touchstone of reasonableness which governs the Fourth Amendment analysis . . . governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (citations omitted). "Deciding whether officers' actions were reasonable requires [this Court] to balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *United States v. Ankeny*, 502 F.3d 829, 836 (9th Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Turning first to defendants' decision to force entry, "[t]he Fourth Amendment and 18 U.S.C. § 3109 both mandate that police officers entering a dwelling pursuant to a search warrant

---

[16] For example, the photographs and DVD all portray Humphrey driving, not Picray. It is unclear how such evidence would negate a finding that Picray violated the law, particularly when the video only lasts for 1:34 and the interaction between Picray and Humphrey lasted at least five minutes. *See* Ex. 106, Universal Serial Bus, ECF No. 53-2.

announce their purpose and authority and either wait a reasonable amount of time or be refused admittance before forcibly entering the residence." *United States v. Bynum*, 362 F.3d 574, 579 (9th Cir. 2004). In other words, "[this Court] must consider all the circumstances surrounding the entry, including, but not limited to, officer safety, [] time of day, [] destructibility of evidence, [] the size of the residence, the nature of the offense, and any other observations by law enforcement that would support a forced entry." *United States v. Combs*, 394 F.3d 739, 744 (9th Cir. 2005).

Defendants approached Picray's home at or about 8:00 P.M. on June 10, 2010. Decl. of Robert E. Franz, Jr. 8–9, 11–12, ECF No. 53-3. At that time, Picray lived in a three-bedroom residence with an attached garage. Decl. of Robert E. Franz, Jr. 6, ECF No. 27-1. Picray estimated that his home was between 1000 and 1100 square feet. *Id*. Defendants repeatedly knocked and shouted "Sheriffs Office Search Warrant." Decl. of Robert E. Franz, Jr. 9, ECF No. 53-3; *see also supra* note 8. At some point during the announcement, Picray heard the "very loud" knocks at the front door, and "shouting." Decl. of David E. Picray 6, ECF No. 45. Picray walked from the bathroom to a nearby window and looked out the window. Corrected Ex. to Decl. of Robert E. Franz, Jr. 7, ECF No. 61. At the window, Picray saw "one or two deputies standing in the front area." *Id*. Upon seeing the deputies, Picray walked into the hallway and was subsequently confronted by Duffitt. *Id*. Duffitt, along with the other officers, had entered the residence after forced entry which occurred approximately 30 seconds after the initial announcement. *See supra* note 8.

The "reasonable wait time standard . . . is necessarily vague." *Hudson v. Michigan*, 547 U.S. 586, 590 (2006) (citations omitted) (internal quotation marks omitted). The proper time measure is not necessarily "how long it would take the resident to reach the door, but how long it

12 – OPINION AND ORDER

would take to dispose of the [sought evidence]." *Id*. The sought evidence, e.g., multimedia devices and other electronics, could have been destroyed in a relatively quick manner.[17] Although this Court has reservations about the intensity of the underlying investigation in light of the nature of the offense, this Court is unprepared to find that a wait slightly longer than 30 seconds is unreasonable under the circumstances. *Compare United States v. Banks*, 540 U.S. 31, 33 (2003) (holding that a 15-to-20-second wait satisfied the Fourth Amendment and 18 U.S.C. § 3109) and *United States v. Phelps*, 490 F.2d 644, 646–47 (9th Cir. 1974) (holding that a 10-to-20 second wait satisfied 18 U.S.C. § 3109), with *United States v. Granville*, 222 F.3d 1214, 1219–20 (9th Cir. 2000) (holding that a five-second wait violated 18 U.S.C. § 3109). Accordingly, defendants are GRANTED summary judgment.[18]

## II. Plaintiff's First Amendment Claim under 42 U.S.C. § 1983

Plaintiff, in his claim for retaliation (#1), asserts that "defendants acting under color of law, arrested plaintiff absent a warrant or probable cause, held him in custody, seized his political picket sign, and excluded him from public property, because of his protected speech." Pl.'s Compl. ¶ 5, ECF No. 1. In response, defendants assert that (1) plaintiff's protected speech was not a "substantial or motivating factor" in defendants' actions and (2) defendants' qualified immunity precludes liability.

### A. Retaliation

"To demonstrate retaliation in violation of the First Amendment, [Picray] must ultimately prove first that [defendants] took action that 'would chill or silence a person of ordinary firmness

---

[17] For example, Picray could have physically destroyed the sought evidence through submersion in water or burning. Perhaps more likely, Picray could have merely deleted the digital copy of the photographs/video recording.

[18] Picray also contends that defendants "ransacked his home." Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 12, ECF No. 43. However, Picray provides no evidence of property damage other than the door itself. *See* Corrected Ex. to Decl. of Robert E. Franz, Jr. 8, ECF No. 61 (indicating that only the door was damaged during the search).

from future First Amendment activities.'" *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231–32 (9th Cir. 2006) (quoting *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)). Second, Picray must also "prove that [defendants'] desire to cause the chilling effect was a but-for cause of the defendant[s'] action." *Id*. at 1232.

Picray has set forth sufficient evidence to demonstrate that defendants' "acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino*, 192 F.3d at 1300. On May 27, 2010, Picray was arrested, booked, and then subsequently released. Decl. of David E. Picray 5, ECF No. 45; *see also Beck v. City of Upland*, 527 F.3d 853, 868 (9th Cir. 2008) ("[A] rational jury could find that the arrest was the culmination of [plaintiff's] long-running dispute with [defendant] over his efforts to block the rubble removal contract. [Plaintiff] presented a substantial case that his protests created the tensions that led to his arrest."). Likewise, on June 10, 2010, Picray's home and truck were searched for evidence, resulting in the seizure of 10 items, including Picray's laptop and cellphone. *See supra* note 9. Therefore, "a rational jury could find that the officers deterred or chilled the future exercise of [Picray's] First Amendment rights." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013).

This Court next asks whether "the officers' desire to chill [Picray's] speech was a but-for cause of their conduct." *Id*. at 1194. As an initial matter, this Court recognizes that probable cause existed for Picray's arrest on May 27, 2010, and the issuance of search warrants on June 10, 2010. *See supra* § I(A)–(B); *see also Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008) (("[T]he fact that Defendants had probable cause is not dispositive. But it undoubtedly ha[s] high probative force."). However, unlike in *Dietrich*, this Court finds that

"there was barely enough evidence to conclude that there was probable cause" for the arrest and subsequent search warrant. 548 F.3d at 901.

As to evidence of retaliatory motive, Picray has made a sufficient showing through circumstantial evidence. *See, e.g.*, *Mendocino*, 192 F.3d at 1300–301 (citations omitted) ("Intent to inhibit speech, which is an element of the claim . . . can be demonstrated either through direct or circumstantial evidence."). First, Picray contends that in January 2010, Duffitt and Ridler threatened him with arrest for his protest activities until he ceased. *See supra* note 4. Second, on May 27, 2010, Picray was arrested while picketing "police misconduct in Benton County." Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 2, ECF No. 43. Both Duffitt and Ridler participated in Picray's arrest. Third, this Court is concerned about the intensity of the underlying investigation in light of the nature of the offense. As of June 9, 2010, Duffitt had already taken Humphrey's statement and spoken with Chief Jones about Picray's photographs and DVD. Despite this evidence, Duffitt sought and obtained a warrant. Decl. of Christopher Duffitt 1–4, ECF No. 32-1. In executing the warrant, Duffitt and Ridler, along with seven other officers, forced entry, handcuffed Picray, and seized ten items of Picray's personal property, including Picray's laptop and cellphone. Defendants provide little if no evidence that Picray was dangerous. *See, e.g.*, Decl. of Robert E. Franz, Jr. 6, ECF No. 53-3 ("PICRAY at one point pointed his finger in my face in a very aggressive manner."). Fourth, Picray has a litigation history involving Benton County. *See, e.g.*, *Picray v. Secretary of State*, 140 Or. App. 592 (1996) (reversing a penalty imposed upon Picray pursuant to ORS § 260.695(4) for political speech); *see also Picray v. Benton Cnty.*, 210 Or. App. 756 (2007); Decl. of Robert E. Franz, Jr. 6, ECF No. 27-2 ("Dispatcher: . . . .We know this person. He's prone to this sort of behavior and we're

15 – OPINION AND ORDER

not sure what his issues are either."). Accordingly, defendants are DENIED summary judgment as to Duffitt and Ridler, but GRANTED summary judgment as to Benton County.[19]

## B. Qualified Immunity

Defendants contend that they are entitled to qualified immunity. In a 42 U.S.C. § 1983 action, an officer will be denied qualified immunity "only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, showing that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201-202 (2001)).

As indicated *supra* § II(A), "[t]aken in the light most favorable to [Picray], the facts establish that the officers' alleged conduct violated his right to be free from police action motivated by retaliatory animus, even if probable cause existed for that action." *Ford*, 706 F.3d at 1195. "Whether [this] right is clearly established for purposes of qualified immunity depends substantially upon the level of generality at which the relevant legal rule is to be identified." *Id*. (citations omitted) (internal quotation marks omitted). "The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional." *Id*. (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

---

[19] In *Edgerly v. City & Cnty. of S.F.*, 599 F.3d 946, 960 (9th Cir. 2010), the Ninth Circuit found that:

> Local government entities can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [entity's] officers. However, liability attaches only where the entity's policies evince a deliberate indifference to the constitutional right and are the moving force behind the constitutional violation.

(citations omitted) (internal quotation marks omitted). Because plaintiff "failed to demonstrate a 'direct causal link' to any [permanent and well settled] municipal policy or custom," his *Monell* claim is insufficient. *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). Accordingly, defendants are GRANTED summary judgment as to Benton County.

16 – OPINION AND ORDER

"At the time the officers acted in [2010], the law in this Circuit gave fair notice that it would be unlawful to jail [Picray] in retaliation for his First Amendment Activity." *Id.*; *see also Skoog*, 469 F.3d at 1235 (discussing retaliatory search and seizure). Accordingly, defendants are DENIED summary judgment as to Duffitt and Ridler.

## III. Plaintiff's Oregon Common Law Claims

Plaintiff asserts three claims under Oregon common law, including: (1) False Arrest; (2) IIED; and (3) Malicious Prosecution. Defendants move for summary judgment as to all three claims.

## A. Plaintiff's Claim for False Arrest

Plaintiff, in his claim for False Arrest (#3), asserts that defendants "intentionally seized and confined plaintiff absent legal justification." Pl.'s Compl. ¶ 9, ECF No. 1. In response, defendants contend "there was probable cause to arrest plaintiff." Mem. of Supp. of Defs.' Mot. for Summ. J. 35, ECF No. 25.

In Oregon, the tort of False Arrest has four elements: "(1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Hiber v. Creditors Collection Serv. of Lincoln Cnty., Inc.*, 154 Or. App. 408, 413 (1998) (citations omitted). As to this fourth element, "it is fundamental that the arrest must have been a false arrest, i.e., one made without legal authority. If the arrest was lawful, then it was privileged." *Napier v. Sheridan*, 24 Or. App. 761, 765 (1976); *see also Bacon v. City of Tigard*, 81 Or. App. 147, 150 (1986) ("The imprisonment could not be 'false' if there was any 'true' reason for it.").

A police officer may "arrest a person without a warrant if the officer has *probable cause* to believe that the person has committed . . . . [a] misdemeanor." ORS § 133.310(1) (2013)

17 – OPINION AND ORDER

(emphasis added). "Probable cause means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS § 131.005(11) (2013); *see also State v. Vasquez-Villagomez*, 346 Or. 12, 23 (2009) (finding that Article I, § 9 of the Oregon Constitution requires an officer to subjectively believe that a crime has been committed and that such belief must be objectively reasonable under the circumstances). Defendants, in reliance upon statements made by Humphrey,[20] had a substantial objective basis for believing that more likely than not, Picray had driven recklessly, ORS § 811.140 (2013), and endangered another person, ORS § 163.195 (2013). *See supra* § I(A). Accordingly, defendants are GRANTED summary judgment.

## B. Plaintiff's Claim for IIED

Plaintiff, in his claim for IIED (#4), asserts that defendants "intentionally caused plaintiff to suffer humiliation, anger, [and] embarrassment . . . by means of conduct that is beyond the bounds of social toleration." Pl.'s Compl. ¶ 10, ECF No. 1. In response, defendants contend that any actions taken did not constitute an extraordinary transgression of the bounds of socially tolerable conduct. Mem. of Supp. of Defs.' Mot. for Summ. J. 36, ECF No. 25.

In *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995), the Oregon Supreme Court found:

> "To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct."

(quoting *Sheets v. Knight*, 308 Or. 220, 236 (1989)). "[This Court] plays a gatekeeper role in evaluating the validity of an IIED claim by assessing the allegedly tortious

---

[20] In *State v. Montigue*, 288 Or. 359, 367 (1980), the Oregon Supreme Court held that a named informant who initiated a report based on personal observations "was sufficiently credible and his information sufficiently reliable so as to provide a proper basis for the issuance of a search warrant."

18 – OPINION AND ORDER

conduct to determine whether it goes beyond the farther reaches of socially tolerable behavior and creates a jury question on liability." *House v. Hicks*, 218 Or. App. 348, 358 (2008) (citations omitted).

"Any 'judgment of social standards' requires, in the first instance, an evaluation of whether the conduct in question is favored or made *privileged by law*, or disfavored or made unlawful by the legislature." *Id*. at 359 (emphasis added). Defendants had probable cause to arrest plaintiff on May 27, 2010, *see supra* § III(A), and searched plaintiff's home and vehicle pursuant to a facially valid warrant, *see supra* § I(B).[21] *See, e.g.*, *Gigler v. City of Klamath Falls*, 21 Or. App. 753, 763 (1975) (finding officer conduct not outrageous where the officers had substantial justification in removing plaintiff). However, as indicated *supra* § II(A), there remains a genuine issue of material fact as to the lawfulness of defendants' activities. In other words, if defendants' desire to chill plaintiff's speech was a "but-for cause" of defendants' conduct, then such conduct is unlawful. Accordingly, defendants are DENIED summary judgment.

## C. Plaintiff's Claim for Malicious Prosecution

Plaintiff, in his claim for malicious prosecution (#5), asserts that defendants "initiated and maintained a criminal prosecution" without probable cause. Pl.'s Compl. ¶ 11, ECF No. 1. In response, defendants contend: (1) a criminal complaint was not initiated and (2) in the alternative, probable cause existed to initiate criminal proceeding. Mem. of Supp. of Defs.' Mot. for Summ. J. 35, ECF No. 25.

---

[21] As to other statements made in plaintiff's memorandum, e.g., "[defendants] threaten[ed] [plaintiff] with imminent violent death while ransacking [plaintiff's] home," this Court is not persuaded. Plaintiff has not presented evidence that his home was "ransacked," *see supra* § I(C) note 18, or that he was threatened with imminent violent death, *see, e.g.*, Ex. 105, Universal Serial Bus, ECF No. 53-1 (recording the entire execution of both search warrants).

"To prevail on a claim for malicious prosecution, a plaintiff must prove that the defendant did not have probable cause to initiate the criminal proceeding." *Hartley v. State Water Resources Dept.*, 77 Or. App. 517, 520 (1986) (citing *Lampos v. Bazar, Inc.*, 270 Or. 256, 266 (1974)). The "'initiation' of a prosecution . . . is essentially a question of the causal linkage between the defendant's acts and the start of the criminal process . . . ." *Rogers v. Hill*, 281 Or. 491 (1978). As stated in the RESTATEMENT (SECOND) OF TORTS § 654(2)(a)–(c) (1977):

>    (2) Criminal proceedings are instituted when

>        (a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence . . . .

>        (c) he is lawfully *arrested* on a criminal charge.

(emphasis added); *see also* RESTATEMENT (SECOND) OF TORTS § 654 cmt. e (1977).[22] Picray was arrested on May 27, 2010, by defendants Duffitt and Ridler. Decl. of Christopher Duffitt 5, ECF No. 26; Decl. of David E. Picray 5, ECF No. 45. Yet, although a criminal proceeding was initiated, it was done so pursuant to probable cause. *See supra* § III(A). Probable cause, as "a complete defense to [this] action," precludes plaintiff's claim. *Gustafson v. Payless Drug Stores*

---

[22] RESTATEMENT (SECOND) OF TORTS § 654 cmt. e (1977), states:

>        Even without the issuance of any process, or indictment or information, criminal proceedings may be instituted by lawful and valid arrest of the accused on a criminal charge. If the arrest is not a valid one, an action for malicious prosecution will not lie unless some further step is taken, such as bringing the accused before a magistrate for determination whether he is to be held. If there is nothing more than the false arrest and the accused is released without any further proceedings, his remedy is an action for false imprisonment. (See § 41). If the arrest is valid and lawful, false imprisonment will not lie. But *the arrest is then an initial step in a criminal proceeding*; and if it is made or instigated without probable cause, the remedy is by an action for malicious prosecution.

(emphasis added); *see also Donovan v. Barnes*, 274 Or. 701, 709–710 (1976) (noting that "criminal proceedings ordinarily involve a formal arrest and, frequently, a detention of the individual charged."); *Wright v. White*, 166 Or. 136, 150 (1941) (citing RESTATEMENT (FIRST) OF TORTS § 654 (1938)).

*Northwest, Inc.*, 269 Or. 354, 356 (1974). Accordingly, defendants are GRANTED summary judgment.

## **CONCLUSION**

For these reasons, defendants' motion for summary judgment, ECF No. 24, is GRANTED IN PART and DENIED IN PART.


IT IS SO ORDERED.


DATED this 24th day of February, 2014.


_____s/ Michael J. McShane_____
Michael J. McShane
United States District Judge

21 – OPINION AND ORDER